***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The date of the injury which is the subject of this claim is August 14, 2009.
2. All parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed between plaintiff and defendant-employer during the relevant time period.
4. Defendant-employer employed three or more persons.
5. Defendant-employer was insured by CNA Insurance.
6. Defendants accepted the compensability of plaintiff's right-knee claim.
7. Defendants denied the compensability of plaintiff's back claim.
8. Defendants paid plaintiff $391.22 per week in ongoing total disability compensation benefits from January 29, 2010 through the present.
9. Plaintiff's correct average weekly wage is $609.34, resulting in an amended compensation rate of $406.25. Defendants agree to provide compensation for the past underpayment of weekly disability compensation from January 29, 2010 through the present and to provide the appropriate increased amount of $406.25 for all future payments of total disability compensation.
10. The following evidence was submitted at the hearing before the Deputy Commissioner as Stipulated Exhibit 1, Pre-Trial Agreement, and Stipulated Exhibit 2, consisting of Industrial Commission forms, discovery responses, plaintiff's employment file and medical records.
11. The issue before the Full Commission is whether plaintiff's back condition is causally related or aggravated by her admittedly compensable injury by accident of August 14, 2009 and if so, to what indemnity and medical compensation, if any, is she entitled. *Page 3 
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the hearing date before the Deputy Commissioner, plaintiff was 51 years old with a date of birth of December 4, 1958.
2. Plaintiff began her employment with defendant-employer in 2002 and worked as a Medical Assistant and as a Cardio Technician. Plaintiff's duties included assisting and preparing patients who were participating in stress tests, which included lifting and positioning patients for the tests.
3. On August 14, 2009, plaintiff was assisting an elderly patient who needed to get out of his bed to undergo an electrocardiogram. The bed in question did not have a mechanical repositioning device. While performing this task, it became necessary for plaintiff to quickly turn and catch the patient. Plaintiff indicated that as she did this, she experienced a snapping sensation in her right knee and a pull in her lower back.
4. Plaintiff reported the occurrence of this incident to her supervisor, Mr. Keith Doran on August 17, 2010. An "Employee Incident Report Form" reflects that as a result of her August 14, 2009 workplace injury, plaintiff injured her right-knee. There is no reference on the form to a back injury.
5. Defendants accepted the compensability of plaintiff's right-knee injury pursuant to an Industrial Commission Form 60.
6. Following plaintiff's admittedly compensable August 14, 2009 injury by accident, plaintiff continued to work for defendant-employer in a light-duty position consistent with her work restrictions until January 29, 2010. *Page 4 
7. Prior to her August 14, 2009 injury by accident, plaintiff was involved in a motor vehicle accident on August 4, 2000 that resulted in a lumbar spine injury. Regarding plaintiff's 2000 back injury, she stated she did not receive any additional treatment subsequent to April 2001 for that condition. Plaintiff further testified that she did not experience any physical restrictions related to her 2000 low back injury from April 2001 until August 14, 2009.
8. Plaintiff first sought medical treatment on August 17, 2009, with her family physician at Mansboro Family Medicine in Wilmington. Records reflect reports of a right-knee injury, but do not include a reference to a back injury.
9. On September 3, 2009 with defendants' authorization, plaintiff was examined by Dr. Jack W. Bowling, Jr. Following an examination, Dr. Bowling diagnosed plaintiff as having a probable right-knee medial meniscal tear for which he recommended arthroscopic surgery. Dr. Bowling targeted September 25, 2009 as the date for surgery.
10. An MRI taken on September 9, 2009, was reviewed by a radiologist who opined that plaintiff had sustained a meniscal contusion. Based upon the radiologist's opinion, defendants denied approval of the surgery recommended by her authorized treating physician Dr. Bowling, and instead authorized further conservative treatment.
11. On September 24, 2009, Dr. Bowling reviewed the results of the MRI and reiterated his recommendation for surgery to address plaintiff's meniscal tear as well as her meniscal contusion. Dr. Bowling further opined that the delay by defendants in authorizing plaintiff's right-knee surgery was unfortunate for plaintiff and unnecessary. Dr. Bowling documented that he had attempted to explain his opinion, after the refusal to authorize surgery to one of defendants' representatives, but that the representative was unresponsive to his concerns. *Page 5 
Plaintiff then participated in physical therapy for several weeks, but her right-knee symptoms only worsened.
12. On September 30, 2009, plaintiff sought treatment for her low back with Dr. George V. Huffmon. This treatment was not authorized by defendants. The record reflects that plaintiff reported having experienced chronic back and neck pain since a motor vehicle accident in 2000. However, the records also specifically note that plaintiff experienced a sudden increase in her back symptoms following her August 14, 2009 workplace injury. Dr. Huffmon diagnosed plaintiff as having lumbar degenerative disc disease as well as spondylolisthesis at L5-S1.
13. On October 15, 2009, plaintiff sought pain management treatment with Dr. Sunil K. Arora. Plaintiff reported experiencing, among other conditions, right-leg and low back pain and that these were new conditions. Dr. Arora recommended therapy, medications and injections.
14. On October 28, 2009, plaintiff returned to Dr. Bowling and reported her worsening right-knee symptoms. Dr. Bowling noted that plaintiff had been experiencing "increasing low back discomfort" for which she had been treating with Dr. Arora for pain management. Dr. Bowling further noted that plaintiff had also been treating with Dr. Huffmon for her back symptoms.
15. Dr. Bowling then recommended a second right-knee MRI, the results of which revealed a degenerative tear of the posterior horn and body of plaintiff's medial meniscus extending into interior surface. Based upon these results, Dr. Bowling renewed his recommendation for surgery.
16. On January 29, 2010, plaintiff underwent surgery performed by Dr. Bowling that consisted of a right knee arthroscopy and a partial medial menisectomy. *Page 6 
17. Subsequent to January 29, 2010, Dr. Bowling had not released plaintiff to return to work in any capacity and defendants have been paying plaintiff ongoing total disability compensation.
18. On May 26, 2010, Dr. Huffmon performed a two-level fusion procedure in order to address plaintiff's low back symptoms. Following this procedure, plaintiff was released with a 50 pound lifting restriction in July 2010 and referred to physical therapy in August 2010.
19. Dr. Huffmon stated that spondylolisthesis can be caused by trauma or can occur as a result of a genetic condition. Dr. Huffmon further indicated that there was no way of determining the exact cause of plaintiff's low back condition.
20. Dr. Bowling has opined to a reasonable degree of medical certainty that plaintiff's compensable right-knee injury materially aggravated her low back condition that in turn necessitated the medical treatment she received from Dr. Huffmon and Dr. Arora.
21. As the result of plaintiff's August 14, 2009 admittedly compensable injury by accident to her right-knee and January 29, 2010 right-knee surgery, plaintiff's pre-existing, non-disabling low back condition was materially aggravated for the worse, eventually necessitating surgical intervention.
22. Based on the totality of the credible evidence of record, the Full Commission finds that as a result of plaintiff's August 14, 2009 admittedly compensable injury by accident, right-knee surgery, along with her materially aggravated back condition and related surgery, plaintiff continues to be unable to earn any wages in her former position or in any position with defendant-employer.
 *********** *Page 7 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On August 14, 2009, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer involving her right-knee. N.C. Gen. Stat. § 97-2(6).
2. North Carolina law requires that where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980). Additionally, "the entirety of causation evidence" must "meet the reasonable degree of medical certainty standard necessary to establish a causal link." Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furn., 353 N.C. 227, 538 S.E.2d 912 (2000). "[A]lthough medical certainty is not required, an expert's `speculation' is insufficient to establish causation." Id.
3. As the result of her August 14, 2009 admittedly compensable injury by accident to her right-knee and January 29, 2010 right-knee surgery, plaintiff's pre-existing, non-disabling low back condition was materially aggravated for the worse, eventually necessitating surgical intervention. N.C. Gen. Stat. § 97-2(6); Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000).
4. A claimant can prove their disability in one of four ways by production of: (1) medical evidence that he is physically or mentally, as a consequence of the work related injury, *Page 8 
incapable of work or any employment; (2) evidence that he is capable of some work, but has after reasonable effort has been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employments; or (4) evidence that he has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Based on the totality of the credible evidence of record as a result of plaintiff's August 14, 2009 admittedly compensable injury by accident, right-knee surgery, as well as her materially aggravated back condition and related surgery, plaintiff continues to be entitled to have defendants pay to her ongoing total disability compensation at the rate of $406.25 per week continuing until such time as she returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. As a result of plaintiff's August 14, 2009 admittedly compensable injury by accident, right-knee surgery, as well as her materially aggravated back condition and related surgery, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, including all expenses associated with treatment provided by Dr. Arora and Dr. Huffmon subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following: *Page 9 
 AWARD
1. Defendants shall continue to pay to Plaintiff ongoing total disability compensation at the rate of $406.25 per week continuing until such time as she returns to work or further order of the Commission. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as a result of her August 14, 2009 admittedly compensable injury by accident, right-knee surgery, as well as her materially aggravated back condition and related surgery, including all expenses associated with treatment provided by Dr. Arora and Dr. Huffmon subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. This fee shall be paid by having counsel for plaintiff receiving every fourth check.
4. Defendants shall pay the costs.
This the ___ day of June 2011.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ LINDA CHEATHAM COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1